UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CALVIN BLYSTRA, individually
and as principal stockholder
of Micro-Environmental, Inc.,
a Florida Corporation,

        Plaintiff,

    and

JON R. PETTIGREW, DAVE
MUILENBERG, MICHAEL E.
SKRZYCKI, MAX DOERING, and
TOM DYKSTRA,

        Plaintiffs,

   v.

FIBER TECH GROUP, INC., a
Delaware Corporation;
CHESAPEAKE SERVICES
CORPORATION, a Virginia
Corporation; and EDWARD
McCULLOCH and THOMAS SOFO,
individually and as officers
of Chesapeake Services
Corporation and the "Micro
Set" Division of Fiber Tech
Group, Inc.,

        Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NOS. 00-4593 and
01-2271 (JEI)


**OPINION**


**APPEARANCES:**

BATHGATE, WEGENER & WOLF, P.C.
By: Dominic J. Aprile, Esq.
One Airport Road, P.O. Box 2043
Lakewood, N.J. 08701

DUNCAN, BLUM, & ASSOCIATES
By: David E. Blum, Esq.
1863 Kalorama Road, N.W.
Washington, D.C. 20009
    Counsel for Plaintiffs

MANDELBAUM & SALSBURG
By: Charles S. Lorber, Esq.
155 Prospect Avenue
West Orange, N.J. 07052

HERBERT S. ROSENBLUM, ESQ.
526 King Street, Suite 211
P.O. Box 58
Alexandria, Va. 22313
     Counsel for Defendants Chesapeake Services Corporation and
     Edward McCulloch

THOMAS SOFO, ESQ., *pro se*
3000 Timber Wood Way
Herndon, Va. 20171

ARCHER & GREINER, PC
By: Mark Oberstaedt, Esq.
One Centennial Square
PO Box 3000
Haddonfield, N.J. 08033
     Counsel for Fiber Tech Group, Inc.

**IRENAS**, Senior District Judge:

On September 18, 2000, Plaintiff Calvin Blystra ("Blystra")

filed suit against Defendants Fiber Tech Group, Inc. ("Fiber

Tech"), Chesapeake Services Corporation ("Chesapeake"), and

Edward McCulloch ("McCulloch") and Thomas Sofo ("Sofo"),

individually and as officers of Chesapeake.  The complaint

("Blystra Complaint") contains twelve counts: Counts One and Two

assert breach of contract and breach of good faith and fair

dealing against Chesapeake only; Counts Three and Twelve assert

misrepresentations of fact and libel/slander against Chesapeake,

McCulloch, and Sofo; Counts Four through Ten assert,

respectively, claims for unfair and deceptive trade practices,

2

tortious interference, theft/misappropriation/conversion of trade
secrets and other property, conspiracy under the federal civil
RICO statute, aiding and abetting, unjust enrichment and fraud
against all Defendants; and lastly, Count Eleven asserts breach
of fiduciary duty against Sofo.  All counts arise out of a series
of transactions that Blystra alleges constituted "fraudulent
schemes" by Defendants to deprive him of his ownership interests
in certain technology that he developed.  Blystra seeks damages
and equitable relief on all counts.

Eight months after Blystra filed his complaint, on May 11,
2001, the limited partners of Micro Environmental, L.P.[1] (the
"Limited Partners" or "Pettigrew Plaintiffs"), filed a ten count
complaint ("Pettigrew Complaint") against the same Defendants
arising out of the same set of facts (alleged in the Blystra
Complaint) and asserting all the same causes of action, except
the two contract claims (Blystra Compl. Counts One and Two).  The
Limited Partners also seek damages and injunctive relief.[2]

Presently before the Court are (1) the Motions to Dismiss
the Blystra Complaint by Defendants McCulloch, Chesapeake, and
Sofo, and (2) the Motions to Dismiss the Pettigrew Complaint by
Defendants McCulloch, Chesapeake, and Sofo.  This opinion

---

[1]  Individually, Jon R. Pettigrew, Dave Muilenberg, Michael R. Skrzycki,
Judith Skrzycki, Max Doering and Tom Dykstra.

[2]  We have subject matter jurisdiction over both causes of action based
on diversity of citizenship and the existence of a federal question.  See 28
U.S.C. §§ 1331, 1332.

3

addresses only the parties' arguments regarding dismissal for
lack of personal jurisdiction pursuant to Fed. R. Civ. P.
12(b)(2), as the Defendants have separately moved for summary
judgment, along with the fourth defendant, Fiber Tech, on the
other grounds.

I.

Plaintiffs' causes of action generally arise out of the
events leading up to and including the sale of certain products
and technology named the Micro-Set.  Plaintiffs assert that the
sale of the Micro-Set to Fiber Tech was the culmination of a
years-long series of conspiracies among the Defendants to deprive
Blystra and the Limited Partners of their ownership and control
of Micro-Environmental, Inc. ("Micro"), and the Micro-Set.

Blystra developed a broad set of products in the 1980s
trademarked Micro-Set, which had various uses as fire retardants
and for waste removal.  In order to further market and develop
the Micro-Set technology, Blystra formed Micro in 1989.[3]  He
transferred ownership of the Micro-Set technology to Micro, whose
only shareholders at the time were Blystra and his wife.

Approximately one year later, Blystra invited Sofo to become

---

[3]  Micro, now inactive, was a Florida corporation with its principal
place of business in Michigan.

4

General Counsel and Secretary of Micro.[4]  Sofo was granted 15%
stock ownership in Micro as compensation for his services,
leaving Blystra and his wife as joint owners of a majority and
controlling interest.  (Blystra Compl. ¶ 17)

In January, 1991, Micro entered into a limited partnership
with the Pettigrew Plaintiffs named Micro-Environmental LP
("Limited Partnership") in order to finance further marketing and
development of the Micro-Set technology.  Pursuant to the
partnership agreement, the Limited Partners contributed
approximately $337,000 for research, development and marketing of
the Micro-Set technology.  Micro, as the general partner,
transferred its ownership of the Micro-Set technology to the
Limited Partnership.[5]  (See Pettigrew Compl. Ex. B (Limited
Partnership Agreement))  The Limited Partnership granted Micro a
non-transferrable, non-assignable exclusive license to use the
Micro-Set technology.  (Pettigrew Compl. Ex. D)

Thereafter Sofo introduced Blystra to McCulloch and his
company Chesapeake.[6]  In an effort to provide financial support,
marketing and administration to Micro, McCulloch / Chesapeake

---

[4]  Sofo was living in Florida but relocated to Michigan, where Blystra
lived.  Sofo now lives in Virginia.

[5]  The Limited Partners were (and are) each citizens of Michigan.  The
Limited Partnership was formed under Delaware's Revised Uniform Limited
Partnership Act.

[6]  Plaintiffs allege that Chesapeake is "owned or controlled by"
McCulloch. (Pettigrew Compl. ¶ 21; Blystra Compl. ¶ 22) McCulloch is a citizen
of Virginia.  Chesapeake is a Virginia corporation with its principal place of
business in Virginia.

5

proposed the following transactions which were memorialized in two one-page agreements, both dated September 9, 1992 (the "September Agreements"): (1) Blystra and Sofo "conveyed" the "assets of Micro" to Chesapeake's wholly-owned subsidiary in exchange for 25% of the subsidiary's common stock (split evenly between Sofo and Blystra);[7] and (2) Micro appointed the subsidiary[8] as its "exclusive agent" for "marketing the products and services if Micro" and for representing Micro in "all contract negotiations pertaining to joint ventures, licenses and the sale or disposition of the assets of Micro." Micro further granted Chesapeake the authority to "represent itself as Micro." The agreement was limited to a two year term.[9] (Blystra Compl. Ex. E)

Plaintiffs now assert that these agreements were a fraudulent scheme by Sofo, Chesapeake, and McCulloch "to deprive

---

[7] The record indicates that Blystra and Sofo, acting on Micro's behalf, did not actually have any assets to convey, as the Micro-Set technology was owned by the Limited Partnership. Indeed, Blystra testified at his deposition: "Q: What assets of Micro did you and Soto transfer to Chesapeake—A: I am not really sure. Q: —at that time? A: Don't laugh. I didn't own anything. The limited partners owned it. I couldn't transfer a damn thing. Q: Are you sure about that? A: Yep. . . . . Q: At the time you signed [the September Agreement], what did you understand the assets to be that you were conveying? A: I don't really know. I knew the limited partners had control over the technology. I couldn't give that away." (Blystra Dep. 148:23-149:7; 151:5 9) Blystra further testified that he signed the September Agreements despite this knowledge because Sofo told him to. (Blystra Dep. 149:7-9).

[8] The wholly owned subsidiary will be referred to as "Chesapeake" for the remainder of this opinion.

[9] Plaintiffs assert that it is uncontested that Chesapeake became the General Partner of the Limited Partnership. Presumably this resulted from Chesapeake purchasing Micro's assets, however, this point is not clear from the parties' papers.

6

Blystra and the Limited Partners of their legitimate interests in the ownership and control of Micro and its technology." (Blystra Compl. ¶ 51)

Blystra alleges that at the time, he had concerns about the September Agreements which he expressed to Sofo. Specifically, Blystra alleges that he wanted to be sure that no ownership interests in Micro shares were transferred by the September Agreements and that the Limited Partners' interests in the Micro-Set technology would not be affected. (Blystra Compl. ¶ 29) Blystra contends that Sofo assured him that he had no cause for concern and that the September Agreements were in Micro's best interest. (Id.)

In June, 1993, McCulloch, representing Micro, attended a trade show in Atlantic City, New Jersey, where he met Leon Yergin, a Fiber Tech[10] representative. (McCulloch Dep. at 65-66) Mr. Yergin expressed an interest in the Micro-Set products and the men agreed to correspond. (Id.) Plaintiffs allege that this episode led to "several more meetings in New Jersey" in 1993 and February, 1994, as well as letter of intent between Chesapeake and Fiber Tech contemplating Fiber Tech's acquisition of all of Micro's products. (Pls. Opp. Brs. at 3)

Plaintiffs further assert that these contacts were followed

---

[10] Fiber Tech is a Delaware corporation with its principal place of business in New Jersey.

by "a series of agreements among Fiber Tech and Chesapeake,
McCulloch and Sofo whereby said products and technology would be
acquired and promoted by Fiber Tech."   (Id.)   Additionally, Sofo
and McCulloch were hired as independent contractors for Fiber
Tech.   (Aprile Verif. Ex. I)   Plaintiffs contend that these
events were Defendants' initial actions in their conspiracy to
"fraudulently evade the legally required steps to consummate the
sale of the Micro-Set technology and products" to Fiber Tech.
(Blystra Compl. ¶ 53; see also Pettigrew Compl. ¶ 37)[11]

In May, 1994, Chesapeake sold the Micro-Set products and
technology to Fiber Tech.   Thereafter Fiber Tech established a
Micro-Set Division in its New Jersey facilities to market and
develop the Micro-Set products.   Plaintiffs allege that the
consummation of the sale to Fiber Tech marked the beginning of
Defendants' "scheme to fraudulently avoid compensation due
Blystra, Micro and the Limited Partners."   (Blystra Compl. ¶ 57;
see also Pettigrew Compl. ¶¶ 35, 37)

The Limited Partners also maintain that around this time,
McCulloch and Sofo advised them that the Micro-Set products and
technology "were essentially defunct."   (Pettigrew Compl. ¶ 36)
These statements were allegedly made in furtherance of the

---

[11]   Blystra also contends that the Defendants libeled and slandered him
in an attempt to destroy his and Micro's reputation and their opportunities to
engage in business with others.   (Blystra Compl. ¶ 54)   Blystra specifically
identifies several statements made by Sofo and McCulloch calling him a liar
and a thief, among other things. (See Blystra Compl. ¶¶ 55-56)

conspiracy to deprive the Limited Partnership of the Micro-Set's
economic benefits.[12]   (Id.)

## II.

Plaintiffs bear the burden of presenting evidence
establishing a prima facie case of personal jurisdiction over
each defendant.   *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93,
94 (3d Cir. 2004).   "Plaintiff[s] must sustain their burden of
proof in establishing jurisdictional facts through sworn
affidavits and competent evidence.   At no time may a plaintiff
rely on the bare pleadings alone in order to withstand a
defendant's Rule 12(b)(2) motion to dismiss for lack of personal
jurisdiction.   Once the motion is made, plaintiff must respond
with actual proofs, not mere allegations."   *Machulsky v. Hall*,
210 F. Supp. 2d 531, 537 (D.N.J. 2002) (quoting *Patterson v. Fed.
Bureau of Investigation*, 893 F.2d 595, 603-04 (3d Cir. 1990)).

The framework for analyzing jurisdiction over the parties is
well known.   A federal court sitting in New Jersey has
jurisdiction over the parties to the extent provided under New
Jersey state law.   *See* Fed. R. Civ. P. 4(e).   New Jersey courts
may exercise personal jurisdiction to the extent permitted by the

---

[12]   In letters addressed to Sofo, dated September 1, 1995, all the
Limited Partners, except Doering, "forfeit[ed]" their partnership interest,
allegedly because they were persuaded by Sofo and McCulloch that the Micro-Set
products and technology were worthless.

United States Constitution.  *Miller Yacht Sales,* 384 F.3d at 96.

Due process requires that each defendant have "minimum
contacts" with the forum state and that the court's exercise of
jurisdiction over the parties comport with "traditional notions
of fair play and substantial justice."  *Int'l Shoe Co. v.
Washington*, 326 U.S. 310, 316 (1945).  "Minimum contacts must
have a basis in 'some act by which the defendant purposefully
avails itself of the privilege of conducting activities within
the forum state, thus invoking the benefits and protections of
its laws.'"  *Asahi Metal Indust. Co. v. Sup. Ct. of Cal.*, 480
U.S. 102, 109 (1987) (quoting *Burger King Corp. v. Rudzewicz*, 471
U.S. 462, 475 (1985)).[13]

Within this framework, personal jurisdiction may be examined
under two distinct theories: general and specific jurisdiction.
*See Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001).
"General jurisdiction is based upon the defendant's continuous
and systematic contacts with the forum and exists even if the
plaintiff's cause of action arises from the defendant's non-forum
related activities.  In contrast, specific jurisdiction is
present only if the plaintiff's cause of action arises out of
defendant's forum-related activities, such that the defendant

---

[13]  To be precise, Plaintiffs' state law claims are governed by the Due
Process clause of the 14th Amendment, whereas their federal RICO claims are
governed by the 5th Amendment's Due Process clause.  However, the personal
jurisdiction analysis is the same in both circumstances.  *See, e.g., Toys "R"
Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003)(analyzing
personal jurisdiction for state and federal claims).

should reasonably anticipate being haled into court in that
forum." *Id.* at 255 (citations omitted).   "A 'relationship among
the defendant, the forum, and the litigation' is the essential
foundation" of specific jurisdiction.   *Helicopteros Nacionales de
Colombia, S. A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting
*Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

### III.

#### A.

The Court does not have general jurisdiction over any of the
moving defendants in this case.[14]   Sofo and McCulloch both reside
in Virginia.   Chesapeake is a Virginia corporation with its
principal place of business in Virginia.   Plaintiffs do not
allege that the moving defendants have any ongoing or regular
contacts with New Jersey that would constitute the requisite
continuous and systematic presence within New Jersey necssary for
this Court to exercise general jurisdiction.   Therefore, if the
Court has jurisdiction over any of the defendants with respect to
any of the claims, it will be under a theory of specific
jurisdiction.

The Third Circuit's approach to specific jurisdiction
questions is "defendant-specific and claim-specific."   *Miller*

---

[14]   Fiber Tech, which has its principal place of business in New Jersey,
does not challenge this Court's assertion of personal jurisdiction over it.

*Yacht Sales, Inc.*, 384 F.3d at 95, n.1 (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)); *see also Remick*, 238 F.3d at 255 ("a conclusion that the District Court has personal jurisdiction over one of the defendants as to the particular claim asserted by [the plaintiff] does not necessarily mean that it has personal jurisdiction over the same defendant as to [the plaintiff's] other claims"). However, where as here, most of the claims arise out of the same set of facts and are tightly interwoven, an individualized discussion of each claim is unnecessary, as the jurisdictional analysis is the same. *See Remick*, 238 F.3d at 255; *Bhd. of Locomotive Eng'rs and Trainmen v. United Trans. Union*, No. 04-5491, 2005 U.S. Dist. LEXIS 11377 at *20-21 (E.D. Pa. June 9, 2005) (citing *Remick*).

B.

The basic harm that Plaintiffs complain about-- albeit embodied in various contract, tort, and breach of fiduciary duty claims-- is the sale of the Micro-Set products and technology to Fiber Tech in New Jersey.

At the heart of Plaintiffs' claims are the allegations that, through various misrepresentations and fraud,

> a.   Commencing in 1992, Defendants Chesapeake, Sofo, and McCulloch embarked on a secret scheme and undisclosed course of conduct whereby trade secrets and other proprietary and confidential information owned by the Plaintiffs were misappropriated, stolen, and used by Defendants

12

Chesapeake, Sofo, and McCulloch who conspired with each other to tortiously interfere with Plaintiffs' ongoing and prospective economically advantageous relationships with a number of third parties;

b.   Commencing in 1993, Defendant Fiber Tech embarked on a secret scheme and undisclosed course of conduct whereby trade secrets and other proprietary and confidential information owned by the Plaintiffs were misappropriated, stolen, and used by Defendant Fiber Tech and Defendants Chesapeake, Sofo, and McCulloch who conspired with them to tortiously interfere with Plaintiffs' ongoing and prospective economically advantageous relationships with a number of third parties;

c.   Commencing in 1993 and thereafter, Defendant Fiber Tech aided and abetted by Defendants Chesapeake, Sofo and McCulloch, and in furtherance of a scheme and conspiracy agreed upon and engaged by all Defendants, misappropriated confidential information owned directly or indirectly by Plaintiffs in violation of the 'September 1992 Agreements.'

(Blystra Compl. ¶ 79; Pettigrew Compl. ¶ 48)

These same alleged wrongs form the basis of Blystra's contract claims against Chesapeake, as well as all of the Plaintiffs' claims for unjust enrichment and breach of fiduciary duty.[15]

The claims had their origins with people and transactions having no initial connection to New Jersey.  Blystra, residing in Michigan, created and developed the Micro-Set technology.  Micro

---

[15]   Only the libel / slander claims are distinct from the rest of the claims.  Accordingly, the libel / slander claims will be addressed separately.

13

was created in Michigan and Sofo came to Michigan to become an officer of Micro.  The Limited Partnership was created in Michigan, comprised entirely of Michigan residents, and organized under Delaware law.  Micro entered into the September Agreements with Chesapeake, a Virginia company, with its controlling shareholder, McCulloch, a resident of Virginia.

But then McCulloch, acting on behalf of Chesapeake and Micro, attended a trade show in Atlantic City, New Jersey in 1993, where he first met Fiber Tech and agreed to correspond with them.  (McCulloch Dep. at p. 65-66)  After that first meeting, McCulloch traveled to Landisville, New Jersey "at least twice" to meet with Dan Fratini, Marketing Manager for Fiber Tech.  (Id. at 70)  The visits culminated in a letter of intent and further correspondence between Chesapeake and Fiber Tech contemplating the sale of the Micro-Set technology.  (Pettigrew Compl. Ex. H)

These contacts ultimately resulted in the sale agreement dated May 1, 1994, which Plaintiffs contend was the result of Defendants' fraudulent conspiracy to misappropriate the Micro-Set technology and tortiously interfere with their prospective business relationships.

On the same day, McCulloch and Sofo each signed agreements to act as independent consultants to Fiber Tech.[16]  (Aprile

---

[16]  Chesapeake was a signatory to McCulloch's independent consultant agreement.  Additionally, Chesapeake executed an agreement whereby Fiber Tech agreed to reimburse Chesapeake for office space, equipment and related services used by McCulloch in his capacity as consultant to Fiber Tech.

Verif. Ex. I)  Their full-time consulting duties mainly consisted of providing various marketing services to Fiber Tech for domestic and international markets.[17]  (Id.)  Notably, Sofo's independent consultant agreement with Fiber Tech is governed by New Jersey law. (Id.)

Thereafter, Fiber Tech established a Micro-Set Division in New Jersey out of which Fiber Tech sought to actively market the Micro-Set technology, including marketing in New Jersey.[18] (Pettigrew Compl. Ex. G)  The establishment of the new division at Fiber Tech in New Jersey was contemplated at the time of the sale.  (Pettigrew Compl. Ex. H at FGI-0027-28)

We hold these contacts sufficient to confer personal jurisdiction over the moving Defendants with respect to these claims.  McCulloch (and thereby Chesapeake) deliberately traveled to New Jersey and met with Fiber Tech in New Jersey at least three times with the intent of establishing a continuing business relationship with Fiber Tech, a New Jersey-based company.  The Defendants took deliberate actions which directly led to the central alleged harm in these lawsuits-- the sale and active

---

(Pettigrew Compl. Ex. H)

[17]  Sofo also agreed to "render legal assistance as may be requested by [Fiber Tech]."  (Id.)

[18]  For example, it appears based on Plaintiffs' documentary evidence that Fiber Tech established a Micro-Set exhibit at the 1996 Haz Mat International Trade show at the Atlantic City Convention Center.  Sofo signed the order for electrical service to be provided at the show.  (Pettigrew Compl. Ex. G at 00982)

marketing of the Micro-Set technology in New Jersey.

Moreover, because Plaintiffs assert that Defendants conspired with each other to achieve the sale of the Micro-Set technology and to further market the Micro-Set in contravention of their ownership rights, the actions taken by McCulloch, Chesapeake and Fiber Tech individually in New Jersey can be considered jurisdictional contacts common to all Defendants. Substantial acts in furtherance of the alleged conspiracy which took place in the forum can be attributed to non-forum co-conspirators who were aware or should have been aware of those acts. *Koresko v. Bleiweis*, No. 04-cv-769, 2005 WL 2436693 at *3 n.3 (E.D. Pa. Sept. 27, 2005); *CDI Int'l, Inc. v. Marck*, No. 04-4837, 2005 WL 146890 at *3 (E.D. Pa. Jan. 21, 2005). Although Plaintiffs have not demonstrated that Sofo was ever physically present in New Jersey, Plaintiffs have established, through Sofo's independent contractor agreement and various correspondence with Fiber Tech that he knew or should have known of the actions his alleged co-conspirators were taking in New Jersey. (See e.g. Aprile Verif. Ex. G at 01169, 00982, 00975, 01011) Thus, the jurisdictional contacts of the other Defendants can be attributed to Sofo by virtue of the alleged acts in New Jersey taken in furtherance of the conspiracy.

Accordingly, we hold that through their purposeful contacts with New Jersey and transactions with Fiber Tech in New Jersey,

the moving Defendants purposefully availed themselves of the
privilege of conducting activities within New Jersey.  As such,
they have minimum contacts sufficient to support and exercise of
personal jurisdiction over them.

Further, consideration of the "fairness factors" leads the
Court to conclude that exercising jurisdiction over the moving
Defendants with respect to these claims is reasonable.  *Pennzoil
Prods. Co. v. Colelli & Assocs.*, 149 F.3d 197, 207 (3d Cir.
1998).  "Cases are 'rare . . . in which minimum requirements in
the concept of fair play and substantial justice . . . defeat the
reasonableness of jurisdiction even [though] the defendant has
purposefully engaged in forum activities.'" *Id.* (quoting *Asahi
Metal,* 408 U.S. at 116 (Brennan, J., concurring )).  The burden
on these Virginia Defendants litigating this case in New Jersey
is not so great as to make our assertion of jurisdiction
unreasonable.  Indeed, Defendants, who have the burden to present
a "compelling case" this point, *Grand Enter. Group v. Star Media
Sales*, 988 F.2d 476, 483 (3d Cir. 1993), make no argument that
exercising jurisdiction over them in this case would be
unreasonable or otherwise unfair.  *See Pennzoil Prods. Co.*, 149
F.3d at 207 (noting that defendants asserted "no claims of
exorbitant travel expenses, unavailability of evidence, drains on
judicial resources or countervailing state interests.")

For the foregoing reasons, Defendants' motions to dismiss

will be denied as to Counts One through Eleven of the Blystra
Complaint and Counts One through Nine of the Pettigrew Complaint.


C.

Lastly, Plaintiffs assert libel and slander claims against
Chesapeake, McCulloch, and Sofo.  Blystra asserts that the moving
Defendants defamed him both personally and professionally.[19]
However, Blystra neither alleges nor shows any New Jersey
connection.  Blystra does not allege or prove that any of the
defamatory statements were made in New Jersey or that the
statements were published in New Jersey.[20]

The Third Circuit applies the "effects test" set forth by
the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984) to
determine personal jurisdiction over a non-resident defendant who
allegedly commits an intentional tort outside the forum.  *Remick*,
238 F.3d at 258.  The effects test requires the Plaintiff to
show: "(1) The defendant committed an intentional tort; (2) The
plaintiff felt the brunt of the harm in the forums such that the
forum can be said to be the focal point of the harm suffered by

---

[19] Although Count Twelve of the Blystra Complaint is entitled "Libel
and Slander," it appears that Blystra is also asserting a claim for trade
libel.  This is a distinction without a difference in the jurisdictional
analysis, however, as the Court finds that Blystra has not alleged or shown
any New Jersey connection with respect to these statements, regardless of
their characterization as personal defamation or trade libel.

[20] The letters that contained the allegedly libelous statements were
published in Michigan. (See Blystra Compl. Ex. G)

the plaintiff as a result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." *Id.*

Blystra cannot establish either (2) or (3). Blystra, a Michigan resident who has demonstrated no ties to any existing or prospective business contacts or markets in New Jersey, could not have suffered any harm in New Jersey. Nor does it appear that the statements were expressly aimed at New Jersey. Indeed, it does not appear that the statements ever made their way into New Jersey at all.

Likewise, the Limited Partners have not alleged or shown how their claims for libel and slander arise out of or relate to any contacts with New Jersey. First, the Limited Partners do not specifically identify the alleged defamatory statements, where or when they were published, or to whom they were published. But it is clear that the Limited Partners could not have felt the brunt of the harm from the alleged defamatory statements in New Jersey. They were Michigan residents and investors in a limited partnership formed in Michigan. Plaintiffs produce no evidence to demonstrate that the Limited Partnership ever did business with anyone in New Jersey or sought to establish future business contacts or operations in New Jersey. As such, they could not possibly feel the harm of any defamation or trade libel in New

Jersey.

Plaintiffs have failed to carry their burden of establishing sufficient contacts with New Jersey.  The Court holds it lacks personal jurisdiction over the moving Defendants with respect to the claims asserted in Count Twelve of the Blystra Complaint and Count Ten of the Pettigrew Complaint.[21]  Accordingly, these counts must be dismissed.


IV.

For the foregoing reasons, the Court will deny the moving Defendants' 12(b)(2) motions, except that the motions are granted as to Count 12 of the Blystra Complaint and Count Ten of the Pettigrew Complaint.  An appropriate order will be issued.


Date: October 25, 2005

Joseph E. Irenas
Senior United States District Judge


---

[21]  Additionally, it appears that all of these claims may be barred by the applicable statutes of limitations.  The statute of limitations for defamation actions is one year from the date of publication.  N.J. Stat. Ann. § 2A:14-3.  Trade libel claims have a six year statute of limitations.  *Patel v. Soriano*, 369 N.J. Super. 192, 247 (App. Div. 2004), *Crawford v. West Jersey Health Sys.*, 847 F. Supp. 1232, 1239 (D.N.J. 1994).